# UNITED STATES DISTRICT COURT

## DISTRICT OF COLUMBIA
### Civil Division

| | |
|---|---|
| **JAQUIA BUIE** | : |
| 1449 Shippen Lane, SE | : |
| Washington, D.C. 20020 | : |
|     **Plaintiff,** | : |
| | :   **Civil Action No. 1:16-cv-01920** |
| **vs.** | : |
| | : |
| **DISTRICT OF COLUMBIA**, a | : |
| Municipal Corporation, and | : |
| **MURIEL E. BOWSER**, Mayor of | : |
| the District of Columbia | : |
| Office of Risk Management | : |
| ATTN: Claims | : |
| 441 4th Street, N.W., Suite 800 South | : |
| Washington, DC 20001 | : |
|     and | : |
| | : |
| **DARRELL L. BEST,** | : |
| Register Number: 61864-007 | : |
| FCI Milan | : |
| Federal Correctional Institution | : |
| P.O. Box 1000 | : |
| Milan, MI  48160 | : |
|     **Defendants** | : |
| _____ | : |

## COMPLAINT

COMES NOW the Plaintiff, Jaquia Buie, by counsel, and moves for the relief stated herein on the grounds set forth below:

## I.  JURISDICTIONAL STATEMENT

Jurisdiction of this Court in this matter is predicated upon the provisions of D.C. Code §§ 11-921, 13-422 and 13-423; 42 U.S.C.A. § 1983; Judicial Code, 28 U.S.C.A. § 1331 for violations under the Fourth and Fifth Amendments of the Constitution of the United States; and the Court's supplementary jurisdiction powers pursuant to 28 U.S.C. § 1367(a).  Venue is in the District of Columbia pursuant to 28 U.S.C.A. § 1391(b)(1) since the events and breaches relevant to this complaint occurred in the District of Columbia.

## II.  PARTIES

1.    Plaintiff Jaquia Buie ("Ms. Buie" or "Jaquia") is currently nineteen (19) years old, was and continues to be, a resident of the District of Columbia and a citizen of the United States.

2.    Defendant District of Columbia ("Defendant District") is, and at all relevant times, was a municipal corporation that is capable of suing and being sued in the District of Columbia. Defendant District operates the District of Columbia Metropolitan Police Department ("MPD"). Muriel E. Bowser is the Mayor of Washington, D.C., and as such, is responsible for the MPD and its personnel.

3.    At all times relevant to this complaint, Defendant Darrell L. Best ("Best"), was an employee, agent and/or servant of the MPD,

armed and in full police uniform, acting under color of state law and within the course and scope of his employment.  Best is sued in both his official and individual capacities.  Defendant Mayor is sued in her official capacity as the Defendant District.

### III.  ALLEGATIONS

#### A.  Background Facts

4.    Officer Best had a history of unwanted sexually-oriented misconduct and harassment involving female colleagues at the MPD. Although some incidents were reported to the agency's executives, the MPD failed to address them properly and, thereby, knowingly ignored a pattern of sexual misconduct and harassment that violated MPD's official policy and was sufficient to constitute a custom.

5.    In 2007, Best supervised, among others, a twenty-year-old female cadet at the police academy.  The cadet reported that Best cornered her in a coatroom, closed the door, groped her, forcibly fondled her buttocks and her breasts, and pressed his lips and tongue against her neck—all against her will.  The same cadet also reported that officer Best had sexually harassed her before the incident and did so again after.

6.    On information and belief, the MPD took no action against Best, a decision that was plainly inconsistent with MPD policy

regarding offenses and penalties.   MPD's default penalty for such misconduct is, and was at that time, termination.

7.    Indeed, instead of punishing Best, in March of 2008, Best, a sergeant at the time, was honored with the distinction of being chosen to give the Invocation and the Benediction following MPD Chief of Police Cathy L. Lanier's remarks at the MPD's annual Awards Ceremony for outstanding police officers.

8.    Later in 2008, a female colleague reported that Best made inappropriate comments to her about taking her to a hotel and giving her a massage.   This colleague also reported that Best hit her on the buttocks as she left the room in police headquarters.

9.    When confronted with this second offence, Best's supervisors in the MPD, pursuant to written policy, should have terminated him summarily, particularly in light of the first offense.   Instead, they only demoted him from sergeant to officer.

10.    This decision allowed Best to remain in the department and to continue to victimize female colleagues, but—more importantly—left him in a position to prey on an even more vulnerable and unwitting public while cloaked in, and empowered by, the imprimatur of the state.

11.     A third MPD colleague also reported that Best inappropriately groped her buttocks in a police precinct. This colleague was a new recruit at the time, and Best was a senior officer.

12.     A former female police officer went public, alleging that Best had also made inappropriate sexual advances towards her in the police precinct where they both worked, telling her that he was "untouchable," and asking, "What are they going to do to me?"

13.     She said that she didn't report the incident because she was afraid it would negatively affect her career. She explained that coming forward with something negative about the department, such as an allegation of sexual misconduct against a fellow officer, would get the complaining officer blackballed.

14.     All of these incidents took place in police headquarters or in other facilities under the auspices of the police department. Together, they are evidentiary of a deliberate indifference to sexual harassment and assault, which led to a systemic deficiency in the manner in which the MPD trains, supervises and disciplines its police officers. Defendant District's police leadership effectively condoned Best's misconduct and allowed it to continue.

15.     Best is a member of the infamous crop of recruits who joined the DC police force from 1989 through 1990. His perverted conduct

5

toward adult females and minors is just one more foul development arising from that now notorious cohort.

16.     On information and belief, Chief Lanier and Officer Best were members together of the MPD 1989-90 cohort of recruits, which former U.S. ambassador Richard W. Carlson once described as, aside from Lanier, a "human train wreck."

17.     The *Washington Post* quoted former inspector William B. Riley, who spearheaded the MPD's disciplinary process in 1991, as having said, "There is a problem with the classes hired in 1989 and 1990 and with the supervision of them."  He said that the "glut of problems" defied simple statistical attribution or classification as rookie indiscretions.

18.     Officer Best is also the latest in a series of MPD officers publicly disgraced or convicted of sexual crimes involving minor females in the District of Columbia.   Veteran MPD officer Wendel Palmer was convicted of sexual assault of a 10-year old female from 2004 to 2006; officer Linwood Barnhill, Jr., a 24-year veteran of the MPD, was convicted of running a prostitution ring of underage females in 2014; and officer Marc Washington was accused of sexually assaulting a 15-year old female in her bedroom in 2013. MPD placed a fellow officer on desk-duty, who was under suspicion of providing improper advance notice to officer Washington that MPD personnel were headed to his dwelling to arrest him.   This gave

Washington an opportunity to purge his computer of inculpatory evidence. A police dispatcher also reportedly had sent text of the mother's complaint to computer screens of officers throughout the 7th District, where Washington was assigned.

19.    The Chief of Police, herself, brought a sexual harassment suit against the department in 1995, when an officer, similar to Best, directed comments about oral sex at Chief Lanier.  She won a $75,000 settlement.

20.    In 2013, after releasing a *Human Rights Watch* report evaluating the police handling of sexual assault cases in the District of Columbia, the author of the report described the MPD on the editorial page of the *Washington Post* as having a police culture that fails to take sexual assault seriously.

21.    Former MPD sergeant Alfred Richmond, who worked with Chief Lanier for years, in an interview broadcast on *WAMU 88.5* on August 23, 2016, said, "It was institutional knowledge that those type of incidents were occurring throughout the department."

**B.    The Police Headquarters Incident**

22.    Metropolitan Police Department's General Order on Disciplinary Procedures and Processes sets forth a list of prohibited police offenses.

23.     Among those offenses is "Misuse of official position, or unlawful coercion of an employee for personal gain or benefit."

24.     In 2007, when then Sergeant Best sexually groped the twenty-year-old female cadet, he engaged in unlawful coercion of an employee for personal gain or benefit.

25.     The default mandatory penalty for even a first offense of unlawful coercion of an employee for personal gain or benefit is removal from the department, i.e. termination.

26.     As a result of MPD's failure to adhere to its written policy and terminate officer Best, years later—with at least one additional intervening reported sexually-oriented offense by Best—Ms. Buie became a sexual abuse victim at the hands of officer Best in MPD headquarters.

27.     On or about the evening of December 3, 2014, officer Best, then an MPD officer, with physical force, psychic pressure, and authoritative intimidation, sexually abused Jaquia Buie, at MPD headquarters, located at 300 Indiana Avenue in Washington, DC.

28.     Officer Best was 45 years old and a 25-year veteran of the MPD at the time.  Jaquia was a minor.

29.     The abuse took place in his office on the fifth floor of police headquarters, the floor where top MPD officials, including Chief Lanier, have offices.  Officer Best took Ms. Buie past Chief Lanier's office

before abusing her.  On information and belief, Chief Lanier was in her office at the time, door ajar, office lights on, and voices audible.

30.   On December 3, 2014, Best picked young Ms. Buie up at a Metro stop in an unmarked police-issued Dodge Avenger.  Best drove her to Georgia Brown's restaurant on 15th Street, N.W.  He was in full police uniform and armed.

31.   Pursuant to MPD policy regarding police uniforms and equipment, an officer may wear full police uniform only when on active duty.

32.   On information and belief, the December 3rd dinner engagement took a demoralizing and lubricious turn when officer Best began to ask Jaquia about her vagina, using lasciviously, however, a non-clinical, colloquial moniker for that female body part.

33.   Officer Best's words initially stunned Ms. Buie, and she asked officer Best not to speak to her that way.

34.   He nonetheless persisted, and she told him that she wanted to go home.  Best offered to take her home.  She told him strongly that she would rather take the Metro and was equipped with the resources to do so.  Despite her appeals to the contrary, he insisted that he would drive her home.  He was in full police uniform and armed, so she acquiesced.

35.     Once they were in the car and began what Jaquia was told would be the drive home, she found the route unfamiliar and inquired about the apparent discrepancy.  Officer Best responded that he needed to go to MPD headquarters on business before bringing her home.  Ms. Buie protested, but officer Best ignored her and compelled her to go with him. Officer Best forced Ms. Buie, against her will, to go to MPD headquarters.

36.     The entrance to the underground garage at police headquarters was not a dimension of the facility available to the public; officer Best accessed it with his police credentials while driving an official vehicle.

37.     At police headquarters, she asked, at least, to stay in the car, but officer Best ordered her to get out of the car and come with him. She did not believe that she had any choice except to obey him, because he was a police officer, she was in a police car, and she was now—albeit completely against her will—at police headquarters.  Although she was afraid, seeing no other option, she obeyed his order.

38.     Using his pass to access an elevator from the garage into MPD headquarters, officer Best brought Ms. Buie to his office and sexually abused her.

39.     According to the United States Attorney's Office, Best's detention of Ms. Buie at police headquarters lasted approximately one hour

and was corroborated by surveillance footage, MPD card-reader records and MPD car records.

40.    As a result of Best's abuse of her, Ms. Buie has suffered, and continues to suffer from, severe emotional distress, including but not limited to, fear, anxiety, depression, uncharacteristic pessimism, faithlessness, significant changes to her bodily appearance (in the form of significant weight-gain resulting from the event), as well as humiliating feelings of worthlessness, sleeplessness, and disturbing involuntary memories of the abuse.

41.    On February 26, 2016, a Federal Court Judge found Officer Best guilty of sexual abuse of a minor in a significant relationship for his perverse actions against Ms. Buie, as well as—in a separate offense involving a different minor—production of child pornography and repeated sexual assaults, also while in police uniform.

42.    Acquiescing to a plea agreement involving both victims, a Federal District Court Judge disregarded what he, himself, articulated in open court as his own, native inclination to sentence officer Best, effectively, to life in prison, and sentenced him to a comparatively light sentence of 18 years in prison.  Officer Best faced a maximum sentence of 52 years.  He will be on a registry for sex offenders for the rest of his life.

43.     After Best's sentencing, Chief Lanier, Best's longtime colleague, told the *Washington Informer* that "Best had used the trust he had built within the community as a pastor and a police officer to take advantage of those who relied on him," yet she expressed no institutional responsibility for his actions.

## V. COUNTS

### COUNT ONE
**Deprivation of Liberty and Right to Bodily Integrity**
**(42 U.S.C.A.§ 1983)**
**Due Process Clause of the Fifth Amendment**

44.     Plaintiff incorporates by reference paragraphs 1-43 as though fully set forth herein.

45.     Officer Best was, at all relevant times, an employee of MPD, a department within the Defendant District, and acting under color of District of Columbia law.

46.     Defendant District is a person within the meaning of 42 U.S.C.A. § 1983 and at all relevant times, conducted itself under the color of the District of Columbia's statutes and MPD's general orders, regulations, and customs.

47.     Ms. Buie has a constitutional right to liberty and bodily integrity.

48.   MPD official policy requires it to terminate officers who misuse their official position or unlawfully coerce another employee for personal gain or benefit. MPD violated its own general order by failing to terminate officer Best after it knew that he had sexually assaulted at least two female officers.

49.   MPD official policy requires that police officers wear uniforms only when on active duty.   MPD failed to enforce this general order.

50.   MPD's failure to follow these general orders is its common practice and custom, and it should have been obvious, or have put Defendant District on notice, that violations of these orders would lead to constitutional violations like those suffered by Ms. Buie.

51.   The Defendant District failed, and continues to fail, to provide adequate sanctions, training, and supervision of MPD police officers in general, including those who it knows, or should have known, have committed sexual misconduct.

52.   Defendant District's failure to follow MPD policies and its failure to provide adequate training, sanctions and discipline has allowed sexual misconduct to proliferate within the MPD and amounts to deliberate indifference or gross negligence, giving MPD officers the belief they can engage in such actions with impunity.

53.     It is likewise the practice of the Defendant District not to enforce its regulations regarding police uniforms and equipment and to allow MPD officers the use of MPD police uniforms and equipment such as cars, passes, and firearms without appropriate supervision and sanctions.

54.     Defendant District's customary disregard of MPD regulations and its lax supervision of uniforms and equipment, when there was an obvious need for the Defendant to control the indicia of police authority, amounts to deliberate indifference to the constitutional rights of those who come into contact with the MPD.

55.     Defendant District has allowed MPD violations of the above policies and its pervasive custom of laxity toward sexual misconduct to exist unchecked for many years, despite its knowledge of past unconstitutional conduct of MPD officers.

56.     When officer Best seized Ms. Buie, without constitutional basis to detain her, Defendant District deprived Ms. Buie of her liberty without due process of law.

57.     In addition, Ms. Buie was in the custody of Defendant District when she was taken to police headquarters and up to the fifth floor office against her will.

58.     Defendant District created a special relationship with Ms. Buie and owed her an affirmative duty to protect her from harm while she was in custody.

59.     Defendant District failed to protect her and violated Ms. Buie's constitutional right to bodily integrity when officer Best sexually abused her.

60.     Defendant District's failure to terminate, train, or supervise officer Best and its failure to follow MPD disciplinary procedures and regulations regarding uniforms and equipment created and increased the danger that Ms. Buie would be deprived of her liberty and her right to bodily integrity.

61.     The sexual abuse of Ms. Buie was a direct consequence of the Defendant District's failure to protect her after a special relationship was created and of its customs that created and increased the danger that she would be sexually abused.

62.     In continuing to afford officer Best the rights, honors, badges, presumptions, and privileges of being an MPD police officer, Defendant District acted with deliberate indifference, reckless disregard, and gross negligence because it had knowledge of Best's prior sexual misconduct, and yet failed to supervise or sanction him in such a manner to

prevent such further misconduct from recurring under the mantle of police authority.

63.     Defendant District's failure affirmatively to correct these customs created the danger and proximately caused the disregard of Ms. Buie's constitutional rights.

64.     The brazen conduct of officer Best, which the Defendant District enabled by its deliberate indifference, reckless disregard and gross indifference of Ms. Buie's safety, shocks the conscience and goes beyond the bounds of all decency.

65.     As a direct and proximate result of Defendant's violations of her constitutional rights, Ms. Buie has suffered severe pain, emotional distress and substantial damages.

<u>**COUNT TWO**</u>
**Unlawful Seizure by a Police Officer**
**(42 U.S.C.A.§ 1983) Fourth Amendment**

66.     Plaintiff incorporates by reference paragraphs 1-65 as though fully set forth herein.

67.     Officer Best used his status as a police officer to restrain Ms. Buie's liberty.

68.     When officer Best unilaterally decided to take Ms. Buie to police headquarters against her will, she was not free to leave and in custody.

69.  Best seized Ms. Buie, knowing that he had no constitutional basis to detain Ms. Buie.

70.  Officer Best's actions amounted to unreasonable seizure of Ms. Buie, violating her Fourth Amendment right.

71.  Defendant District owed Ms. Buie a constitutional duty of care once she was detained.

72.  Defendant District breached its duty to protect Ms. Buie by failing to prevent officer Best from unlawfully detaining her against her will and then sexually abusing her inside MPD headquarters.

73.  The unlawful detainment of Ms. Buie against her will was the direct and proximate cause of the disregard of Ms. Buie's constitutional rights.

74.  The brazen conduct of officer Best, which the Defendant District enabled by its deliberate indifference and reckless disregard of Ms. Buie's safety, shocks the conscience and goes beyond the bounds of all decency.

75.  As a direct and proximate result of Defendant's violations of her constitutional rights, Ms. Buie has suffered severe pain, emotional distress and substantial damages.

## COUNT THREE
### (Against the District of Columbia)
### Injunctive Relief

76.     Plaintiff incorporates by reference paragraphs 1-75 as though fully set forth herein.

77.     Defendant District's violations of MPD policies and customs described herein are a direct and proximate cause of the violation of Ms. Buie's constitutional rights and the constitutional rights of other citizens.

78.     As a direct result, Ms. Buie is suspicious of all male MPD police officers, fearing further loss of personal liberty and personal violation.

79.     Ms. Buie requests that the Defendant District be enjoined from failing to train, supervise and discipline its MPD police officers in an adequate manner.

80.     Ms. Buie suffers, and will continue to suffer, irreparable injury if the Defendant District continues to allow the MPD to conduct itself as alleged herein.

81.     There is an imminent threat that Ms. Buie, or other young women similarly situated to her, will suffer the same harm that she has suffered if the Defendant District allows the culture of MPD sexual misconduct to continue.

## COUNT FOUR
### Negligence

82.     Plaintiff incorporates by reference paragraphs 1-81 as though fully set forth herein.

83.     At all relevant times, Defendant District and its agents and employees owed a special duty of care to safeguard Ms. Buie from harm once officer Best put her in his police car, purportedly to drive her home, and drove her to police headquarters against her will.

84.     Officer Best was at all relevant times, acting under color of police authority of Defendant District.

85.     Defendant District has a general duty to protect citizens from sexual misconduct of MPD officers acting within the scope of their employment when previous instances of the same type of harm are known, or should have been known, and it was foreseeable that the absence of proper supervision permits recurrence of the same misconduct.

86.     Defendants breached the duty of care owed to Ms. Buie when officer Best subsequently sexually abused her in police headquarters.

87.     Defendant District acted negligently and with deliberate indifference by its repeated failure to supervise Best, its employee and agent, thereby condoning the officer Best's conduct and therefore, any liability for his actions is imputed to the Defendant District.

88.   As a direct and proximate result of Defendant's negligence, Ms. Buie has suffered and will continue to suffer severe and consequential damages.

### COUNT FIVE
**(Against the District of Columbia)**
**Negligent Entrustment**

89.   Plaintiff incorporates by reference paragraphs 1-88 as though fully set forth herein.

90.   Best's employment as a MPD police officer provided him with a unique opportunity, and even an incentive, to use the indicia of police authority sexually to assault Ms. Buie.   Defendant District negligently entrusted Best with a police uniform, weapon, police car and security passes to MPD headquarters in violation of MPD's regulations.

91.   Defendant District's negligent entrustment allowed officer Best to wield the authority entrusted to him unchecked and in a way that leveraged and facilitated opportunities to exploit sexually and victimize, as an MPD police officer, citizens such as Ms. Buie.

92.   Defendant District had a duty to protect Ms. Buie, a minor female, not to enable one of its sworn officer's wrongfully to deprive her of her liberty by telling her that he would drive her home and taking her to police headquarters instead and then by misusing her sexually through abusive deployment of the indicia of police authority.

93.    Defendant District breached this duty by negligently entrusting MPD equipment to officer Best, which allowed him to use the indicia of police authority to sexually abuse Ms. Buie.

94.    Ms. Buie's injuries were directly and proximately caused by Defendant District's breach.

95.    As a direct and proximate result of Defendant's negligence, Ms. Buie has suffered and will continue to suffer severe and consequential damages.

## COUNT SIX
### (Against the District of Columbia)
### Negligent Retention

96.    Plaintiff incorporates by reference paragraphs 1-95 as though fully set forth herein.

97.    Defendant District failed to terminate Best after he misused his position as sergeant and sexually coerced a female cadet for his own personal benefit in violation of MPD regulations.

98.    Defendant District knew, or should have known, that officer Best's previous sexual misconduct constituted a pattern of behavior that made it known and foreseeable that he would prey on females while he was in police uniform.

99.    Defendant District had a duty to protect females, especially minor females, from sexual misconduct by one of its own police

officers whom it knew was a sexual predator. Defendant District owed a special duty to Ms. Buie once she was in officer Best's custody.

100. Defendant District breached its duty to protect Ms. Buie by failing to fire officer Best for his prior known sexual misconduct and/or by failing to place officer Best in a position that prevented him from engaging in inappropriate contact in police headquarters with Ms. Buie while he was in police uniform.

101. Ms. Buie's injuries were directly and proximately caused by Defendant District's breach.

102. As a direct and proximate result of Defendant's negligence, Ms. Buie has suffered and will continue to suffer severe and consequential damages.

## COUNT SEVEN
### Negligent Infliction of Emotional Distress

103. Plaintiff incorporates by reference paragraphs 1-102 as though fully set forth herein.

104. By using his police authority endowed by the MPD, officer Best placed Ms. Buie in a zone of danger, causing her to fear for her safety.

105. Defendant District knew, or should have known, that given officer Best's past misconduct in police facilities while in uniform, it

was especially likely that he would improperly detain Ms. Buie and sexually assault her, which would result in serious emotional distress to Ms. Buie.

106.   Defendant District breached its duty to protect Ms. Buie from officer Best.

107.   The breach of the Defendant District's duty was the direct and proximate cause of the serious emotional distress suffered by Ms. Buie.

108.   Officer Best's sexual assault of Ms. Buie is outrageous, both shocking the conscience and going beyond all possible bounds of decency.

109.   As a direct and proximate result of Defendant's negligence, Ms. Buie has suffered and will continue to suffer severe and consequential damages.

## COUNT EIGHT
### Intentional Infliction of Emotional Distress

110.   Plaintiff incorporates by reference paragraphs 1-109 as though fully set forth herein.

111.   At all relevant times, Defendant District failed to supervise officer Best, who was known, or should have been known, by Defendant as a sexual predator.

112.   As a direct consequence of Defendant District's failure to supervise officer Best, he was able to abuse his position as a police officer and the equipment provided to him by Defendant District, as well as his office in MPD headquarters, sexually to abuse Ms. Buie.

113.   Defendant District's failure to supervise Best was intentional and in deliberate disregard of a high degree of probability that emotional distress would result to Ms. Buie.

114.   Officer Best's conduct was intentional, willful and malicious.

115.   As a result, Ms. Buie has suffered, and will continue to suffer, severe, lasting and extreme emotional distress.

## COUNT NINE
### Sexual Abuse of a Minor

116.   Plaintiff incorporates by reference paragraphs 1-115 as though fully set forth herein.

117.   Officer Best sexually abused Ms. Buie with force in his office on the fifth floor of MPD headquarters and was convicted of sexual abuse of a minor in a significant relationship.

118.   Officer Best acted with the intent to sexually abuse Ms. Buie, and his conduct was perpetrated with reckless disregard for her safety and well-being.

119.   Officer Best's actions put Ms. Buie in reasonable fear of imminent battery.

120.   Best intentionally touched Ms. Buie's breasts and other parts of her body in an offensive and wanton manner, and forcibly pressed himself upon her sexually, with his penis exposed, against her will.

121.   As a result of Best's actions, Ms. Buie has suffered physical and mental injury and will continue to suffer severe mental anguish.

## COUNT TEN
### Breach of Fiduciary Duty

122.   Plaintiff incorporates by reference paragraphs 1-121 as though fully set forth herein.

123.   Officer Best, by insisting on driving Ms. Buie home on December 3, 2014, induced her to believe he was acting in her interest.  As a result, Ms. Buie got into his police car, giving Best dominion over her.

124.   Best created a fiduciary duty to act for her benefit in good faith and without self-interest.

125.   Best breached this duty by, against her will, driving her to police headquarters instead and sexually abusing her.

126. As a result of the breach of his fiduciary duty to Ms. Buie, she suffered and continues to suffer, severe anxiety and mental and physical distress.

**WHEREFORE**, Plaintiff demands compensatory damages from Defendants in the amount of Twenty Million Dollars ($20,000,000.00 USD), plus punitive damages to the extent allowed by law, and attorney's fees, interest and costs against Defendants.

Plaintiff demands injunctive relief requiring Defendant District to implement an appropriate plan to supervise, train, and sanction MPD regarding sexual assault and abuse and to comply with MPD's current regulations.

If officer Best is found liable on any count, Plaintiff demands that Defendant District pay the full amount of any judgment obtained against officer Best;

And for such other and further relief as the Court deems just and equitable.

I solemnly affirm under the penalties of perjury that the contents of the foregoing paper are true to the best of my knowledge, information, and belief.

_Jaquia Buie_
JAQUIA BUIE

Dated: _9/22/16_

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims that are triable.

Respectfully submitted,

SMITH MUSTILLE, LLC

By: _____
Mark A. Smith      Bar # 439116
2200 Pennsylvania Avenue, NW
Fourth Floor East
Washington, D.C. 20037
(202) 776-0022
877-854-1631 – fax
masmith@smithmustille.com

*Attorneys for Plaintiff*

September _28_, 2016