# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JAQUIA BUIE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 16-01920 (CKK/RMM) |
| | ) | |
| DISTRICT OF COLUMBIA *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff, Jaquie Buie ("Ms. Buie" or "Plaintiff"), raises tort claims and civil rights claims under 42 U.S.C. § 1983 against Defendant District of Columbia ("the District" or "Defendant") and Defendant and former Metropolitan Police Department ("MPD") Officer Darrell L. Best, based on Mr. Best's sexual assault of Ms. Buie when she was a minor. Pending before the Court is a motion ("Motion to Compel") in which Ms. Buie seeks to compel the District to designate an individual to provide testimony at a 30(b)(6) deposition and to produce documents related to the topics listed in her Notice of Deposition Pursuant to Fed. R. Civ. P. 30(b)(6) and Request for Production of Documents ("30(b)(6) Notice"). Ms. Buie also seeks to recover the expenses she incurred to bring the Motion to Compel. The District contends that the 30(b)(6) Notice is overly broad and that it seeks discovery that is disproportionate to the needs of the case, and therefore has cross-moved for a protective order to relieve it from the allegedly burdensome discovery obligations. *See* Def.'s Mot. for a Protective Order, ECF No. 46. The parties also disagree about how the presumptive seven-hour limit for depositions applies when a party designates multiple witnesses as 30(b)(6) deponents. Having considered the relevant pleadings, the parties' arguments and applicable law, the Court will GRANT-IN-PART and DENY-IN-PART

Plaintiff's Motion to Compel, and GRANT-IN-PART and DENY-IN-PART Defendant's Motion for Protective Order.

## BACKGROUND

This case arises from the sexual assault of Ms. Buie by Defendant Darrell L. Best ("Mr. Best"), who was then an officer with the District of Columbia MPD. *See Buie v. District of Columbia*, 273 F. Supp. 3d 65, 66 (D.D.C. 2017). Mr. Best pled guilty to sexually abusing Ms. Buie and was sentenced to 18 years in prison. *Id.* As a result of this incident, Ms. Buie sued Mr. Best, the District, and Mayor Muriel Bowser.[1] The Complaint alleges, *inter alia*, that MPD had a practice and custom of failing to provide adequate training to prevent sexual misconduct by its officers, or to appropriately sanction or discipline officers who engaged in such conduct, thereby creating an environment that facilitated Mr. Best's assault of Ms. Buie. Compl. ¶¶ 48-55, 85-87, 98-100, ECF No. 1.

On February 23, 2018, Ms. Buie served the District with the 30(b)(6) Notice at issue in this motion. *See* Mem. P. & A. in Supp. of Pl.'s Mot. ("Pl.'s Mem.") at 11-15, ECF No. 41-1 (copy of the 30(b)(6) Notice). The 30(b)(6) Notice asks the District to designate an official to testify regarding four topics: (1) Mr. Best's personnel, disciplinary, and training files; (2) the disciplinary files and documents concerning the training, supervision, termination, or resignation of other MPD members involved in instances of alleged sexual misconduct and harassment; (3) the methodology and procedures the MPD uses to make significant personnel decisions concerning MPD members involved in alleged sexual harassment or sexual misconduct; and (4) investigatory records pertaining to investigations into alleged instances of sexual misconduct and harassment by MPD members. *Id.* The 30(b)(6) Notice further requests, pursuant to Rule 34,

---

[1]     Mayor Bowser has been dismissed from this action. *See Buie*, 273 F. Supp. 3d at 69.

that the District produce documents related to the four deposition topics. *See id.* at 12. For each

topic, the 30(b)(6) Notice seeks records and testimony spanning Mr. Best's tenure at MPD, from

February 1987 through August 2015. *See id.* at 14. The District objected to Ms. Buie's request

in a letter dated March 6, 2018, challenging the clarity and specificity of the proposed deposition

topics, and the relevance and proportionality of the discovery Ms. Buie seeks. *See* Pl.'s Mem. at

16-18 (copy of the District's letter).

After advising the Court of the nature of the dispute in hearings before Judge Kollar -

Kotelly and the undersigned Magistrate Judge, Ms. Buie filed the pending Motion to Compel.

In that motion, Ms. Buie argued that the proposed deposition topics and requested documents are

clearly defined, relevant to her claims, and proportional to the needs of the case. *See* Pl.'s Mot.

to Compel Disc. at 3, ECF No. 41. The District opposed that motion and cross-moved for a

protective order, arguing that the 30(b)(6) Notice is overly broad, vague, and unduly

burdensome, and that it seeks testimony and documents that are disproportionate to the needs of

the case. *See* Def.'s Opp'n to Pl.'s Mot. to Compel Disc. ("Def.'s Opp'n") at 4-6, ECF No. 46.

The District also asked the Court to narrow the date range for each topic to 2006 through 2015,

and submitted declarations explaining that locating responsive personnel, disciplinary, and

investigatory records predating 2006 would require a manual search of voluminous files that

would take months to complete. *See id.* at 12-14. In her reply, Ms. Buie agreed to narrow the

scope of her request for testimony and documents by limiting the relevant time period for Topics

Two and Four to 2006 through the present for records and testimony concerning all MPD

members other than Mr. Best and members of his initial training class. *See* Pl.'s Reply in Supp.

of Pl.'s Mot. to Compel Disc. ("Pl.'s Reply") at 2-3, ECF No. 47. For records responsive to

Topics One and Three, and records responsive to Topics Two and Four that pertain to Mr. Best and his initial training classmates, Ms. Buie seeks records from 1987 through the present. *See id.*

The parties further clarified their positions at two motions hearings before the undersigned. The District confirmed that it partially agreed with Ms. Buie's proposed narrowing of the scope of the 30(b)(6) Notice,[2] but continued to object to providing records dating back to 1987 for any MPD member other than Mr. Best. In response to an Order requesting supplemental briefing, the District advised the Court of its intent to release additional records. *See* 7/24/18 Minute Order; Def. District of Columbia's Response to This Court's July 24, 2018 Minute Order ("Supp. Mem."), ECF No. 53.

## LEGAL STANDARD

### I.  Motion to Compel

A party who seeks a deposition under Rule 30 and who believes that the opposing party has failed to meet its obligations under that Rule may, after conferring in good faith with the opposing party, seek to compel a response pursuant to Federal Rule of Civil Procedure 37. *See* FED. R. CIV. P. 37(a)(1), 37(a)(3)(B)(i), (iii)–(iv). A party also may move to compel the production of documents requested pursuant to Rule 34. *See id.*; *see generally* FED. R. CIV. P. 30(b)(2) (noting that parties may, in accordance with Rule 34, request documents in connection

---

[2]     Ms. Buie conditioned her willingness to narrow the temporal scope of Topics Two and Four upon the Court's acceptance of the proposal to require that the District: (1) use "sex." as a search term in the Personnel Performance Management System ("PPMS") system to search for records from the Internal Affairs Division ("IAD") and Disciplinary Review Division ("DRD"), as well as Equal Employment Opportunity ("EEO") reports involving sexual misconduct or sexual harassment; and (2) allow Ms. Buie to review EEO files from 1998 to the present. Pl.'s Reply at 2- 3. At the July 24, 2018 motions hearing, the District confirmed its willingness to search for records from 2006 through the present, to use the "sex." search term, and to provide Ms. Buie access to EEO files.

with a deposition notice). The nonmoving party's obligation to produce a 30(b)(6) witness, or produce documents, turns on whether the disputed deposition topics and document requests fall within the scope of Federal Rule of Civil Procedure 26(b). *See Prasad v. George Washington Univ.*, 325 F.R.D. 1, 3 (D.D.C. 2018) ("The topics on which a litigant must produce and prepare a 30(b)(6) deponent to testify are limited by the familiar relevance standard of Rule 26(b)(1) of the Federal Rules of Civil Procedure."); FED. R. CIV. P. 34(a) (permitting requests for production "within the scope of Rule 26(b)").

Rule 26(b), in turn, permits discovery into "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). Determining whether proposed discovery is relevant and proportional requires consideration of the importance of the issues at stake, the amount in controversy, the parties' access to the information, the parties' resources, the importance of the discovery in resolving the issues, and the burden of the discovery relative to the likely benefit. *Id.* Information within this scope "need not be admissible in evidence to be discoverable." *Id.* However, the court must limit the extent of discovery if: the discovery is unreasonably cumulative or duplicative or obtainable from another source that is more convenient, less burdensome, or less expensive; the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or the discovery is outside the permitted scope of Rule 26(b)(1). FED. R. CIV. P. 26(b)(2)(C).

## II.     Motion for Protective Order

Federal Rule of Civil Procedure 26 provides that "for good cause" a court may issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c)(1). The party requesting the protective order bears the burden of showing good cause "by demonstrating specific evidence of the harm that

would result." *Jennings v. Family Mgmt.*, 201 F.R.D. 272, 275 (D.D.C. 2001); *Alexander v. FBI* (*Alexander I*), 186 F.R.D. 71, 75 (D.D.C. 1998); *see also Washington v. Thurgood Marshall Acad.*, 230 F.R.D. 18, 21 (D.D.C), *on reconsideration*, 232 F.R.D. 6 (D.D.C. 2005) (reconsidering a separate proposition). Protective orders may "deny discovery completely, limit the conditions, time, place, or topics of discovery, or limit the manner in which the confidential information is to be revealed." *Univ. of Mass. v. Roslin Inst.*, 437 F. Supp. 2d 57, 60 (D.D.C. 2006).

## ANALYSIS

### I.     Ms. Buie's Procedural Objection to the District's Motion for Protective Order

Ms. Buie contends that the District's Motion for a Protective Order is not properly before the Court because the District did not receive permission to file such a motion and did not confer with Plaintiff's counsel before filing. Pl.'s Reply at 1-2. Although the Minute Order setting a briefing schedule for this discovery dispute only specifically authorized a Motion to Compel, the District's incorporation of a cross-motion with its opposition was not improper. *See generally* 4/20/2018 Minute Order. The Protective Order raises no new substantive issues and simply provides an additional procedural vehicle for the District to present its objections to the 30(b)(6) Notice. At the time of filing, the parties had already conferred regarding the 30(b)(6) Notice and had presented their respective positions to the Court at hearings. Given the overlap between the Motion to Compel and Motion for Protective Order, the Court's evaluation of the parties' arguments will encompass both motions.

### II.     The Disputed 30(b)(6) Topics

The District challenges each of the four proposed 30(b)(6) deposition topics, and Ms. Buie's related request for production of related documents, raising overbreadth, proportionality,

and vagueness arguments.  The District's principal objection is that the proposed deposition topics and document requests are disproportionate and impose an unreasonable burden upon the District to the extent that they seek records that predate 2006 or testimony about matters predating 2006.  The Court will address each proposed 30(b)(6) topic, and the District's objections thereto, in turn below.

**A.  Topic One — Request For Officer Best's Personnel, Training, and Disciplinary Files**

Topic One seeks testimony regarding Mr. Best's "hiring, promotion, demotion, transfer, training, supervision, termination, or resignation."  30(b)(6) Notice at Attachment A.  The District has not challenged the relevance of testimony or documents pertaining to these topics and has advised the Court that records responsive to Topic One have been produced to Ms. Buie.  Therefore, the only remaining dispute concerns Ms. Buie's request that the District designate a deponent to testify regarding the information in those records.  The District contends that the request for such testimony is disproportionate to the case, and asks that the testimony be limited to information from 2006 through the present.

Mr. Best's conduct, the scope of any training and supervision that might have deterred sexual misconduct and his assault of Ms. Buie, and the District's response to Mr. Best's alleged prior misconduct comprise the central issues in this case.  Thus the relevance of this proposed deposition topic can hardly be overstated.  The District's suggestion that information concerning events that occurred before 2006 is presumptively irrelevant to Ms. Buie's claims is unfounded.  If, for example, Mr. Best had engaged in similar misconduct in 1990, without being terminated, that would be a critical piece of evidence supporting Ms. Buie's claims.

The fact that Mr. Best's tenure at MPD spans 28 years does not render testimony addressing that time period disproportionate or unduly burdensome.  The District's assertion that

it would be impossible to find a witness sufficiently familiar with Mr. Best's history to testify on any or all of the subjects in Topic One is speculative, given the lack of any indication that the District has attempted to identify current or past employees whose tenure and position at MPD would make them knowledgeable about the requested topics during the relevant time period. That objection also reflects a misunderstanding of the nature of 30(b)(6) testimony. 30(b)(6) witnesses speak for the company or agency that they represent, and are not expected to base their testimony on matters entirely within their personal knowledge. *See In re Vitamins Antitrust* Litigation, 216 F.R.D. 168, 172-73 (D.D.C. 2003); FED. R. CIV. P. 30(b)(6) (requiring that 30(b)(6) witnesses "testify about information known or reasonably available to the organization"). Thus, it is both proper and common for a 30(b)(6) witness to prepare for the deposition by reviewing the records of the organization on whose behalf he or she testifies. Indeed, the District has an obligation to educate its witnesses so that they are prepared to testify regarding all relevant matters known by or reasonably available to the District and its employees. *See In re Vitamins Antitrust*, 216 F.R.D. at 173 (faulting party for failing "to meet its obligations to produce a Rule 30(b)(6) witness properly educated as to the noticed deposition topics"); *U.S. ex rel Fago v. M & T Mort. Corp.*, 235 F.R.D. 11, 23 (D.D.C. 2006) (noting that responding party must prepare the deponent so that he or she can testify about the relevant topics); *Alexander v. FBI* (*Alexander II*), 186 F.R.D. 137, 141 (D.D.C. 1998) ("[T]he designating party has a duty to prepare the witness to testify on matters not only known by the despondent, but those that should be reasonably known by the designating party."). Although it may require extensive preparation to educate a witness about matters spanning such a lengthy time period, that burden does not outweigh the benefit of permitting discovery regarding Mr. Best's conduct, training, and supervision as an MPD member.

In sum, the testimony requested in Topic One is well within the discovery obligations that a defendant should reasonably expect to bear. Therefore, the District shall designate one or more witnesses to testify regarding Topic One.

**B. Topic Two — Request For Testimony and Records Regarding "Training, Discipline, or Supervision, Termination or Resignation" of Darryl L. Best and other MPD Members**

*1. Specificity and Clarity of the Request for Testimony and Records*

Topic Two seeks testimony and records regarding "[t]he disciplinary files, and all other documents having to do with the training, discipline, or supervision, termination, or resignation of Darryl L. Best, individually, and those of other sworn MPD members involved in an instance or instances of alleged sexual misconduct/harassment."  30(b)(6) Notice at Attachment A.  Ms. Buie has clarified that the reference to training pertains only to training on sexual misconduct and sexual harassment received by sworn MPD members, and that the remaining categories seek only information regarding the discipline, supervision, termination or resignation of officers who were involved in alleged sexual misconduct or harassment.  Pl.'s Reply at 6.  At the August 6, 2018 motions hearing, Ms. Buie explained that she seeks records regarding the discipline, supervision, or termination of those officers even if the records pertain to discipline or personnel decisions that were not based on the officer's involvement in sexual misconduct or harassment. Ms. Buie also has clarified that the terms "supervision," "discipline," "resignation," and "termination" should be defined consistent with their use in MPD General Orders.  *Id.* Notwithstanding that clarification, the District contends that the reference to "training, discipline, or supervision, termination or resignation" is vague and that it therefore does not know what information Ms. Buie intends to seek from the 30(b)(6) deponent.  Def.'s Opp'n at 14-15.

The party seeking testimony pursuant to Rule 30(b)(6) must "describe with reasonable particularity the matters" on which examination is requested. FED. R. CIV. P. 30(b)(6). To meet that standard, the 30(b)(6) notice, or related correspondence, must contain sufficient information to put the receiving party on notice of the areas of inquiry that will be explored in the deposition.[3] *See Alexander II*, 186 F.R.D. at 140; *see also Pulliam v. Continental Cas. Co.*, 2-CV-370 (RWR), 2006 WL 3003977, at *5 (D.D.C. 2006) ("[A] party must specifically state the subject of the testimony requested under Federal Rule 30(b)(6)."). If the party seeking testimony fails to meet that burden, the responding party has no obligation to produce a witness. *See Alexander II*, 186 F.R.D. at 140.

The District's challenge to Ms. Buie's description of the testimony sought in Topic Two is unfounded. Ms. Buie has clearly stated that she seeks documents regarding training that addressed sexual harassment and/or sexual misconduct. That resolves any uncertainty the District initially may have had about the nature of the training that is at issue. "Training" shall further be construed to encompass both in-service training and initial training, as those terms are defined and used in MPD's General Orders.[4] *See* General Order 201.30 at 2,

---

[3]     Some courts have interpreted the "reasonable particularity" standard to encompass the concept of overbreadth, ruling that 30(b)(6) deposition topics that are "broad and amorphous" do not meet that standard. *See, e.g., Federal Ins. Co. v. Delta Mech. Contractors, LLC*, 11-48MI (PAS), 2013 WL 1343528, at *4 (D.R.I. Apr. 2, 2013); *Banks v. Office of Senate Sergeant-At-Arms*, 222 F.R.D. 7, 18-19 (D.D.C. 2004). However, arguments regarding the scope of 30(b)(6) topics are more properly raised as direct challenges to the breadth of proposed discovery under Rule 26(b), and the Court declines to merge that inquiry into its evaluation of the Notice's compliance with Rule 30(b)(6).

[4]     Although the parties did not submit copies of the General Orders cited in this Opinion, the Court takes judicial notice of their content. *See Pharm. Research & Mfrs. Of AM. v. U.S. Dep't of Health & Human Servs.*, 43 F. Supp. 3d 28, 33 (D.D.C. 2014) ("Courts in this jurisdiction have frequently taken judicial notice of information posted on official public websites of government agencies."); FED. R. EVID. 201(b), (c) (permitting courts to take judicial notice on its own of matters that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

https://go.mpdconline.com/GO/3162000.pdf (effective July 27, 2001) (defining in-service training); General Order 201.29 at 2, https://go.mpdconline.com/GO/3820000.pdf (defining initial training) (effective March 19, 2008). Ms. Buie's request that the terms supervision, discipline, resignation, and termination be interpreted consistent with their use in MPD General Orders eliminates any possible confusion regarding the meaning of those terms. The General Order regarding disciplinary procedures and processes defines "disciplinary action" and "termination." *See* General Order 120.21 at 4, https://go.mpdconline.com/GO/120_21re.pdf (effective Apr. 13, 2006). The 30(b)(6) Notice's reference to "discipline" should be deemed synonymous with "disciplinary action," and "termination" shall be defined as it is in the relevant General Order. *See* General Order 120.21 at 4. Another MPD General Order defines "supervisor" as "[t]he person to whom a member generally reports," and articulates certain roles and responsibilities that attend a supervisory position, such as the duty to "proactively supervise their employees." General Order 120.28 at 4, 6, https://go.mpdconline.com/GO/3795000.pdf (effective Apr. 11, 2007). For purposes of the 30(b)(6) Notice, "supervision" shall encompass the duties and responsibilities that supervisors must perform, as set forth in General Order 120.28. "Resignation" should have its ordinary meaning, *i.e.*, to relinquish one's position as a member of MPD, whether effected through retirement or otherwise. In sum, the disputed terms have unambiguous meanings, and the 30(b)(6) Notice gives the District ample notice of the proposed areas of inquiry.

Ms. Buie's request for production of documents uses the same language as the request for testimony, but it is unclear whether the District's challenge to the alleged vagueness of the disputed terms applies to the document request. Such a challenge would arise under Rule 26, because document requests are not subject to Rule 30(b)(6)'s "reasonable particularity"

requirement. To the extent that the District raises that argument, it suffers the same defect as the District's objection to the proposed testimony — the disputed terms are neither vague nor unclear. Although it may be more challenging for the District to electronically search for records responsive to this topic than it would be to find records of investigations of sexual harassment and misconduct, that does not render the topic vague.

### 2. *Proportionality of the Request for Records and Testimony*

The District also challenges Topic Two as overly broad and disproportionate to the case to the extent that it seeks records predating 2006 for both Mr. Best and members of his initial training class; testimony about information from before 2006; or records concerning discipline or other personnel actions that are unrelated to sexual harassment or misconduct. The request for records and testimony concerning Mr. Best dating back to 1987 duplicates the information requested in Topic One, and need not be addressed separately here. Accordingly, the only disputed issues that require resolution by the Court are the breadth of Topic Two's request for testimony and records concerning MPD members, and the appropriate date range for responsive records pertaining to Mr. Best's initial training classmates.

The "general rule in legal actions is to favor broad disclosure" through discovery. *CFTC v. McGraw–Hill Cos.,* 390 F. Supp. 2d 27, 31 (D.D.C. 2005). Notwithstanding that breadth, "[c]ourts need not tolerate fishing expeditions, discovery abuse, and an inordinate expense involved in overbroad and far-ranging discovery requests." *Pederson v. Preston*, 250 F.R.D. 61, 65-66 (D.D.C. 2008) (internal quotation marks omitted). When presented with discovery that imposes a burden that "outweighs its likely benefit," courts should exercise their broad discretion to narrowly tailor discovery. *Gilmore v. Palestinian Interim Self-Government Auth.*, 843 F.3d 958, 968 (D.C. Cir. 2017).

The records Ms. Buie seeks may yield information that is relevant to, and may significantly impact the success of, her claims. Given the nature of her allegations, Ms. Buie has a significant interest in discovering: evidence that one of Mr. Best's classmates engaged in sexual misconduct or harassment without suffering any severe consequences; records revealing the circumstances under which officers involved in sexual misconduct or harassment resigned or were terminated; disciplinary records regarding sexual misconduct or harassment; and evidence describing the training MPD members received regarding sexual harassment and sexual misconduct. As the District notes, the most pertinent and useful information would concern events that occurred within ten years of Ms. Buie's assault, and the probative value of the information diminishes with time. *See* Def.'s Opp'n at 11-12. Nonetheless, the proposed discovery seeks records that implicate significant issues in the case, and Ms. Buie cannot independently obtain those records absent discovery.

However, the discovery request is overly broad to the extent that it seeks records regarding *all* disciplinary actions involving MPD members with prior involvement in sexual misconduct or harassment, and all records regarding the supervision of those members. For example, records reflecting that an officer was disciplined for being absent from duty and records addressing aspects of supervision that are wholly unrelated to the officer's prior alleged sexual misconduct or harassment have no connection to Ms. Buie's claims. "Generally, discovery that is 'too far removed' from allegations in the operative Complaint is disallowed." *Prasad v. George Washington University*, 323 F.R.D. 88, 96-97 (D.D.C. 2017). Consequently, the Court will narrow this portion of the request to encompass only the records in personnel or DRD files that involve disciplinary decisions or actions, or supervisory decisions or actions, that are directly tied to alleged incidents of sexual harassment or misconduct. For example, a

document indicating that a supervisor should monitor a member more closely in light of the alleged misconduct or harassment would be responsive, but a document discussing only the appropriate degree of supervisory oversight for all MPD members would not be responsive.

Locating and producing disciplinary records from 2001 through 2005 for Mr. Best's training classmates will impose a moderate burden upon the District. Records of disciplinary actions related to sexual harassment or misconduct predating 2006 should reside in the DRD files, which are housed at the Federal Records Center ("FRC"). *See* Gottert Decl. ¶¶ 3-4, ECF No. 46-2. DRD paper records are organized using the officer's name. *See id.* ¶ 5. Although most files predating 2006 cannot be located through an electronic search, files from 2001 through 2005 are logged in an Excel spreadsheet that includes the officer's name, the case number, and the charge. *See id.* ¶ 8. The charge listed on the spreadsheet would not necessarily reveal whether an officer had been involved in sexual misconduct or harassment, because several charges might encompass such conduct. *See id.* ¶ 18. However, MPD could identify responsive records from 2001 through 2005 by searching the DRD spreadsheet for Mr. Best's classmates' names, requesting the corresponding DRD paper files from the FRC, and reviewing the files to determine which, if any, of the records in the file concern discipline arising from sexual misconduct or harassment and whether an adverse action (*i.e.*, termination, removal, a fine, suspension, or reduction in rank) was taken against the classmate.

Retrieving responsive disciplinary records from 1987 through 2000 that concern Mr. Best's classmates would require only slightly more effort. The Excel spreadsheet for cases received between 1988 and 2000 lists the officer's name, but not the underlying charge. *See id.* ¶ 9. MPD would have to consult the corresponding entry in a handwritten logbook to identify the charge associated with a case on the spreadsheet, and thus could not rule out obviously

irrelevant charges (such as an AWOL charge) based on the spreadsheet.  *See id.* ¶ 10.  However, the MPD could identify responsive records without consulting the logbook by simply searching the 1987 through 2000 DRD spreadsheet for Mr. Best's classmates' names, retrieving the corresponding paper files from the FRC, and reviewing those files to locate any disciplinary records concerning sexual misconduct or harassment.  Weighed against the potential benefit of allowing Ms. Buie to obtain the responsive information, and given the relatively small number of files at issue, this task would not impose an undue burden.  Thus, the request for Mr. Best's training classmates' disciplinary records concerning sexual misconduct or harassment, dating back to 1987, is proportional to the case.

It also would not be unduly burdensome for the District to search the personnel files of Mr. Best's classmates to attempt to locate records regarding training addressing sexual harassment or sexual misconduct or the circumstances under which those officers resigned or were terminated.  Currently, only two of Mr. Best's classmates are known to have been involved in alleged sexual harassment or misconduct.  Even if the District's further review of the DRD spreadsheets and files reveals that all twelve of Mr. Best's classmates had a history of sexual misconduct or harassment, the search for responsive records would be limited to the personnel files of twelve officers.  Manually reviewing such a small number of personnel files would neither impose an undue burden nor be disproportionate.

Therefore, the District must produce records responsive to Topic Two, as narrowed above.[5]  The District must search for records spanning the time period of 1987 through 2018 for

---

[5]    The District confirmed, at a motions hearing, that it does not object to Ms. Buie's proposal to change the end date of the relevant time period to 2018, provided that the time period begins in 2006.  Thus, by agreement of the parties, the date range at issue in this topic ends approximately three years later than the August 2015 end date identified in the 30(b)(6) Notice.

Mr. Best's initial training classmates, and from 2006 through 2018 for other MPD members. Identifying records responsive to this narrowed request will require manual review, but "[t]he mere fact that discovery requires work and may be time consuming is not sufficient to establish undue burden." *Fagan v. District of Columbia*, 136 F.R.D. 5, 7 (D.D.C. 1991).

The Court's narrowing of Topic Two addresses the concerns the District raised in its objection to the breadth of the requested 30(b)(6) testimony. Although the proposed date range for testimony regarding Mr. Best's classmates spans thirty-one years, the topics of inquiry are relatively narrow, *i.e.,*: whether any of those twelve individuals were accused of sexual harassment or sexual misconduct; whether the allegations of misconduct or harassment led to disciplinary actions or affected the manner in which the officer was supervised; and the circumstances surrounding those individuals' voluntary or involuntary departure from MPD. A witness would not have to memorize the entire personnel and disciplinary history of Mr. Best's classmates to prepare to testify. It is neither unduly burdensome nor disproportionate to require the District to identify and prepare a 30(b)(6) deponent to address these narrow areas of inquiry, and the Court therefore rejects the District's request to shorten the date range of the 30(b)(6) testimony regarding Mr. Best and his training classmates to 2006 through the present. The District shall provide a witness who can testify about the issues identified in Topic 2, consistent with the manner in which the scope of that topic has been narrowed by Ms. Buie and the Court.

**C. Topic Three — Request for Records and Testimony Regarding the Methodology and Procedures Governing the Promotion, Demotion, Transfer, Training, Supervision or Termination of its Members Involved in Alleged Sexual Misconduct or Sexual Harassment.**

Topic Three seeks records and testimony, from 1987 through the present, concerning "the methodology that . . . MPD applied and the procedures it followed in the promotion, demotion, transfer, training, supervision, or termination . . . of sworn MPD members involved in an

instance of alleged sexual misconduct/harassment." 30(b)(6) Notice at Attachment A. Although the District initially objected to this request as vague and overbroad, it has since located and agreed to release to Ms. Buie copies of "twenty-six (26) General Orders and/or Special Orders relating to training, supervision, discipline, promotions, and termination of officers accused of sexual misconduct and/or sexual harassment" dating back to 1976. Supp. Mem. at 2. That satisfies the portion of Topic Three that seeks the production of records, and the only remaining dispute concerns the proportionality of Ms. Buie's request for 30(b)(6) testimony regarding these MPD procedures and policies. The District objects to the date range that governs the request for 30(b)(6) testimony regarding Topic Three, and asks that it be narrowed to 2006 through 2018. Ms. Buie counters that the request is clear and that information spanning Mr. Best's entire tenure at MPD is both relevant and proportional to her claims.

The policies and procedures that dictate the appropriate response to MPD members' alleged acts of sexual misconduct and harassment are relevant to Ms. Buie's allegation that Mr. Best began engaging in sexual misconduct and harassment several years before he encountered Ms. Buie, and that the District knowingly ignored that misconduct and harassment and failed to respond to Mr. Best's conduct in the manner required by MPD policy. *See* Compl. ¶¶ 4-6; *United States ex rel. Shamesh v. CA, Inc.,* 314 F.R.D. 1, 8 (D.D.C. 2016) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (noting that relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense" (internal quotation marks omitted)). Ms. Buie invokes MPD's alleged failure to correct or adequately respond to Mr. Best's conduct as an element of her legal theory supporting Counts One, Four, Six, Seven, Eight, which renders this area of inquiry important to the resolution of her claims. *See* Compl. ¶¶ 63-64, 87, 98-100, 105, 111-13. Ms.

Buie's assertion that the misconduct began before 2007 puts policies predating 2007 squarely at issue. Given that the Complaint does not specify when the first alleged incident of misconduct occurred, the policies and procedures in effect throughout Mr. Best's tenure may impact the viability of Ms. Buie's claims.

Preparing a witness to testify about the relevant policies and procedures should not be particularly onerous. This request concerns only the 26 policies applicable to situations involving allegations of sexual harassment or misconduct.[6] Although it may be difficult for the District to find employees who independently recall the policies that were in effect from 1987 through 2005, the designated deponent could become knowledgeable by reviewing the policies and procedures that the District has agreed to produce to Ms. Buie and/or interviewing current or former employees responsible for implementing or enforcing those policies.

In sum, given the importance of this topic to Ms. Buie's legal theory, the benefit of allowing her to question witnesses regarding the policies and procedures responsive to Topic Three outweighs the burden of preparing a witness to do so. The request for 30(b)(6) testimony on that topic is therefore proportional to the needs of the case. The District shall designate one or more witnesses to testify regarding Topic Three.

### D.  Topic Four — Request for Records and Testimony Regarding Investigations of Allegations of Sexual Misconduct And Harassment by Sworn MPD Members

Topic Four seeks "the investigatory records and all other documents . . . [concerning] investigation of allegations of sexual misconduct/harassment by sworn MPD members." 30(b)(6) Notice at Attachment A. The District contends that the discovery request is unduly

---

[6]     Although the District has located policies dating back to 1976, some policies remained in effect for more than a decade. *See* General Order 120.21 (noting that the "Disciplinary Procedures and Processes" General Order became effective in 2006 and replaced a General Order that became effective on November 10, 1983).

burdensome and disproportionate to the extent that it seeks records and testimony dating back to 1987 for investigations pertaining to Mr. Best and his classmates at the training academy. Notwithstanding that objection, the District has agreed to produce the investigatory file for an officer in Mr. Best's training class who was terminated based on a 1991 incident of alleged sexual misconduct, provided that the investigation is not pending and does not involve a minor.[7] *See* Supp. Mem. at 1.

The District acknowledges that records from prior sexual misconduct or harassment investigations are "relevant and necessary to establishing [Ms. Buie's] *Monell* claim," and that it must produce some historical files in discovery. Def.'s Opp'n at 6. Given that Ms. Buie partially attributes Mr. Best's misconduct to lapses in training and "systemic waywardness," she has a strong interest in learning about any investigations involving similar misconduct by Mr. Best's training classmates. Reply at 4. Discovery is the only means for Ms. Buie to fully explore this subject matter. Accordingly, the proportionality analysis turns on whether the burden of producing investigatory records predating 2006 outweighs the benefit of giving Ms. Buie access to them.

The manner in which the District maintains its investigatory records would make it extremely difficult for the District to retrieve all pre-2006 investigatory records pertaining to Mr. Best's training classmates. Investigatory records are stored by MPD's Internal Affairs Division ("IAD"). *See* Pearce Decl. ¶ 2, ECF No. 46-3. IAD has approximately 40,000 paper files from 1989 through the present. *See id.* ¶¶ 6-7. IAD began storing information about investigatory records in the electronic Personnel Performance Management System ("PPMS") in 2006, and

---

[7] The District also has agreed to produce the investigatory file for an alleged incident of sexual harassment that occurred in 2008 and involved one of Mr. Best's training classmates.

PPMS incorporates some information from logs that were created before the system's adoption. *See id.* ¶ 12; Brown Decl. ¶ 4, ECF No. 46-4. The paper files are organized by year and tracking number. *See* Pearce Decl. ¶ 5. Consequently, to locate files from sexual misconduct or sexual harassment investigations that are not referenced in PPMS, MPD would have to manually review all of its paper files from 1987 through 2005. *See id.* ¶¶ 8-9. Knowing the names of Mr. Best's classmates would not reduce the burden of the search because the paper files are not indexed by name. *See generally id.* ¶ 5. The District estimates that manually searching 26 years of files would require 333 days of full-time work by a staff member. *See id.* ¶ 10. Thus it is reasonable to infer that manually searching 18 years of files, from 1987 through 2005, would require several months.

Ms. Buie understandably objects to the notion that the District's failure to maintain a comprehensive index of its historic IAD files should deprive her of access to potentially relevant records. Ordinarily, "the burden that results from disorganized record-keeping does not excuse a party from producing relevant documents." *Brooks v. Macy's Inc.*, 10-CV-5304 (BSJ/HBP) 2011 WL 1793345, at *4 (S.D.N.Y. 2011). However, the Court cannot ignore the fact that the District would have to conduct a 'needle in a haystack' search to locate all relevant investigatory files from 1987 through 2005. *See generally Alexander v. FBI*, 194 F.R.D. 305, 313 (D.D.C. 2000) (noting that party alleging undue burden "must make a specific, detailed showing of the burden [the disputed] search would require" and identifying estimated staff hours necessary to conduct the search as a type of evidence that might support an undue burden argument).

The burden of locating potentially responsive investigatory files from 1987 through 2005 outweighs any benefit that Ms. Buie would gain from receiving the requested information. The District has identified one responsive investigatory file that predates 2006 — concerning a 1991

incident of sexual misconduct — by searching PPMS for records pertaining to Mr. Best's classmates. The District would have to expend hundreds of hours reviewing paper files to determine whether other classmates were investigated for similar conduct. Given that the production of relevant DRD files encompassing the same period should provide information about any adverse actions that resulted from sexual misconduct or harassment investigations, requiring the District to conduct such a burdensome search for IAD files would be disproportionate to the case.

Ms. Buie's request for 30(b)(6) testimony about investigations of Mr. Best's classmates dating back to 1987 presents the same proportionality concerns. Preparing a witness to testify about relevant investigations would require MPD staff to review thousands of paper files to find investigatory records responsive to Topic Four. Neither Rule 26 nor Rule 30(b)(6) requires the District to undertake such a burdensome task.

The Court will therefore sustain most of the District's objections to Topic Four. The District shall produce non-privileged investigatory records pertaining to the two confirmed incidents involving Mr. Best's training classmates,[8] and must designate and prepare a 30(b)(6) witness to testify regarding those investigations. Otherwise, the District may limit its search and production to investigatory files that can be located using the keyword "sex." in the PPMS

---

[8]     At the motions hearings, the District asserted that District of Columbia law precludes it from disclosing records of investigations involving a minor, and that the law enforcement privilege shields from disclosure records concerning open investigations. That issue is not ripe for review by the Court. If any records responsive to Topic 4 involve juveniles or an open investigation, the District should explain the basis for withholding those documents in its discovery responses and privilege log. Any dispute regarding the appropriateness of the District's decision to withhold specific records may be presented to the Court in accordance with the Court's Scheduling and Procedures Order, ECF No. 24, as amended by subsequent Minute Orders.

system.  The scope of 30(b)(6) testimony on Topic Four shall be limited to the investigations that correspond to the files produced to Ms. Buie.

### III.      Length of the 30(b)(6) Deposition

The parties also disagree about whether the presumptive seven-hour time limit for depositions applies to 30(b)(6) depositions in which multiple deponents will testify.  The District contends that the 30(b)(6) deposition should last no more than seven hours, pursuant to Federal Rule of Civil Procedure 30(d).  Ms. Buie contends that she should be permitted to examine each 30(b)(6) designee for up to seven hours.

Rule 30 provides that "a deposition is limited to one day of 7 hours," unless the parties stipulate or the Court orders otherwise.  FED. R. CIV. P. 30(d).  The Advisory Committee notes for the 2000 Amendment indicate that "[f]or purposes of this durational limit, the deposition of each person designated under Rule 30(b)(6) should be considered a separate deposition."  *See* FED. R. CIV. P. 30, Advisory Committee note to subdivision (d) (2000).  Although the Advisory Committee notes are not binding on the Court, they explain the intent behind the rules and "are nearly universally accorded great weight in interpreting federal rules."  *Horenkamp v. Van Winkle & Co., Inc.*, 402 F.3d 1129, 1132 (11th Cir. 2005) (internal quotation mark and citation omitted); *see generally 3M Company v. Boulter*, 842 F. Supp. 2d 85, 96-101 (D.D.C. 2012) (citing Advisory Committee notes to interpret Rules 12 and 56).  Therefore, the Court declines to adopt the District's interpretation of Rule 30(d).

Given the scope of the 30(b)(6) Notice, permitting Ms. Buie to examine each designated deponent for seven hours is likely to make the 30(b)(6) deposition excessively long.  The Court will, therefore, exercise its discretion to modify the time limit for the 30(b)(6) deposition, and set an 18-hour limit for testimony responsive to Topics One through Four of the 30(b)(6) Notice.

Unless the parties agree otherwise, no more than seven hours of testimony may be taken during a single day of the 30(b)(6) deposition.

## IV.     Ms. Buie's Request for Costs and Fees

Finally, Ms. Buie asks that she be awarded the costs and attorney's fees that she incurred in bringing the Motion to Compel.  Pl.'s Mot. at 9.  Where, as here, a motion to compel "is granted in part and denied in part, the court . . . may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion."  FED. R. CIV. P. 37(a)(5)(C).  Courts apportion reasonable expenses by looking at each individual claim for relief, and determining whether the actions of the non-prevailing party were "substantially justified."  *See, e.g., Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 130 F. Supp. 3d 326, 337 n.7 (D.D.C. 2015), *aff'd*, 857 F.3d 939 (D.C. Cir. 2017); *see also Lang v. Intrado, Inc.*, 07-CV-00589, 2007 WL 3407366, at *5 (D. Colo. Nov. 13, 2007) ("In seeking a just apportionment, the Court is guided by the 'substantial justification' standard set forth in Rule 37.").  "[A] party meets the 'substantially justified' standard when there is a 'genuine dispute' or if 'reasonable people could differ' as to the appropriateness of the motion."  *Alexander v. FBI* (*Alexander III*), 186 F.R.D. 144, 147 (D.D.C. 1999) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).  Courts also look to the relative success of the parties when apportioning expenses.  *See D.L. v. District of Columbia*, 251 F.R.D. 38, 49-50 (D.D.C. 2008) ("The Court's overwhelming decision for the plaintiffs on the merits of their motion is sufficient to show that the District's objections were not substantially justified."); *see also Caruso v. Coleman Company*, 157 F.R.D. 344, 350 (E.D. Pa. 1994) ("In this case, the Court's decision was mixed and neither party was an overall 'winner' or 'loser.'").

The District was substantially justified in objecting to the scope of the 30(b)(6) Notice. The Court sustained some of the District's objections, and likely would have imposed additional limits on the requested discovery if Ms. Buie had not independently narrowed the scope of her requests. The District was not substantially justified in challenging Ms. Buie's failure to define "training, discipline, or supervision, termination or resignation," given that the MPD's own General Orders clearly define several of those terms. The District's pursuit of that line of argument had only a *de minimis* impact on the costs associated with the Motion to Compel, given that Ms. Buie did not devote a substantial portion of the briefs to addressing that issue. "[R]easonable people could differ" on the other issues that were in dispute. *Alexander III*, 186 F.R.D. at 147. Accordingly, the Court denies Ms. Buie's request for reasonable expenses. *See Ross-Hime Designs, Inc. v. United States*, 124 Fed. Cl. 69, 79 (2015) ("As both motions were justified, an award of attorney's fees under Rule 37(a)(5)(C) is not appropriate."). Each party shall bear its own costs and fees.

## CONCLUSION

For the foregoing reasons, on this 14th day of August, 2018, the Court hereby GRANTS-IN-PART and DENIES-IN-PART Plaintiff's Motion to Compel [ECF No. 41], and GRANTS-IN-PART and DENIES-IN-PART Defendant's Motion for Protective Order [ECF No. 45]. The 30(b)(6) deposition, and production of documents responsive to the 30(b)(6) Notice, shall proceed subject to the limitations set forth above and in the Order accompanying this Memorandum Opinion.

_____
ROBIN M. MERIWEATHER
UNITED STATES MAGISTRATE JUDGE